IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

RANDALL RAY B,[1]  )
                   )
    Plaintiff,     )
                   )
vs.                )  Case No. 19-cv-158-DGW[2]
                   )
COMMISSIONER of SOCIAL )
SECURITY,          )
                   )
    Defendant.     )

## MEMORANDUM and ORDER

**WILKERSON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff, represented by counsel, seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for disability benefits in April 2015, alleging disability as of January 4, 2013. After holding an evidentiary hearing, an ALJ denied the application on January 9, 2018. (Tr. 15-34). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in

---

[1] In keeping with the court's recently adopted practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Docs. 12 & 21.

this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

1. The ALJ failed to consider whether he met the requirements of Listing 12.05, Intellectual Disorder.

2. The ALJ erred by selectively considering and "cherry-picking" the evidence.

3. The ALJ erred in assessing the reliability of the allegations made by plaintiff and his wife.

4. An IQ test done in May 2016 should have been the basis for reopening a prior application and should have led to a finding that he met Listing 12.05 and perhaps Listing 12.02.

## Applicable Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to

perform any other work?   20 C.F.R. § 404.1520.

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled.  A negative answer at any step, other than at step three, precludes a finding of disability.  The plaintiff bears the burden of proof at steps one through four.  Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show that there are jobs existing in significant numbers in the national economy which plaintiff can perform. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made.  It is important to recognize that the scope of review is limited.  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g).  Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.  *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).   This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve

conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### **The Decision of the ALJ**

The ALJ followed the five-step analytical framework described above. He determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. He was insured for DIB only through December 31, 2017.

A prior application had been denied on January 6, 2015. The ALJ denied plaintiff's request to reopen that application.

The ALJ found that plaintiff had severe impairments of status post-CVA (stroke), anxiety, mood disorder, chronic pain syndrome, and obesity, and these impairments did not meet or equal a Listing.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at the light exertional level limited to no climbing of ladders, ropes, or scaffolding; occasional climbing of ramps and stairs; occasional balancing, stooping, kneeling, crouching, and crawling; and no concentrated exposure to workplace hazards. He was also limited to simple, routine tasks with only occasional interaction with the public.

Plaintiff had no past relevant work. Based on the testimony of a vocational

expert, the ALJ concluded that was able to do other jobs that exist in significant numbers in the national economy.

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to plaintiff's arguments.

1.  **Agency Forms**

Plaintiff was born in 1972 and was 45 years old on the date of the ALJ's decision. (Tr. 227). A prior claim was denied by a different ALJ on January 6, 2015. There is no indication that plaintiff sought judicial review. (Tr. 94-105).

Plaintiff worked as a mechanic for Bird Motorcycles & ATV from 2005 to January 2013, making $800.00 per month. (Tr. 232).

In a Function Report submitted in May 2015, plaintiff said he could not work because he forgot how to do some things and he had memory loss, depression, extreme fatigue, constant head pain, swelling in his feet and legs, difficulty swallowing, and trouble with balance. He could not hold things without dropping them. (Tr. 271).

Plaintiff's wife submitted a report stating that plaintiff had depression, anxiety, mood swings, poor thought process, and poor memory. He had numbness in both hands and decreased ability to grasp things. He was unable to distinguish between hot and cold temperatures. (Tr. 248).

## 2. Evidentiary Hearing

Plaintiff was represented by an attorney at the evidentiary hearing in September 2017. (Tr. 42). Counsel stated that an IQ test was done after plaintiff's prior application had been denied. He asked the ALJ to reopen the prior denial. (Tr. 44-45).

Plaintiff said he could not work because he got out of breath if he walked far. He could not hold anything with his hands and could not feel hot or cold with them. He forgot what he was doing. These problems started after he had a stroke. (Tr. 49). He had constant pain in his head behind his eyes. His feet and ankles swelled up. He became confused easily. (Tr. 52-54).

Plaintiff's wife testified that, since his stroke, she had to make his food, bathe him, and "argue with him to try to get him to understand things." She said he could not hold onto things and could not feel heat and cold. (Tr. 56).

## 3. Relevant Medical Records

Plaintiff had a stroke in January 2013. (Tr. 389-390). In October 2013, his neurologist, Dr. David Robertson, noted that his neurological deficits were continuing to improve. He still had slurred speech and mild dysphagia which was improving. His PEG (feeding) tube had been removed. He had headaches which were "manageable" with gabapentin and Carbamazepine, an anticonvulsant. The doctor noted that he would likely continue to recover, but his "work may be limited due to his neurological deficits from a brainstem stroke." (Tr. 360-361).

Plaintiff's prior application was denied in January 2015.

Plaintiff saw Dr. Mitchell, his primary care physician, in March 2015. He had no shortness of breath; his appetite was good, and he was sleeping well. Neurologic exam was nonfocal, i.e., normal. He had normal motor strength in the upper and lower extremities and sensory exam was intact. (Tr. 447). Dr. Mitchell noted similar findings on exam in December 2015. (Tr. 542-543).

In February 2016, plaintiff complained to Dr. Mitchell of debilitating headaches since backing off oxycodone. He said he had numbness in his hands and dropped things. He said he had shortness of breath "even when walking across [a] room." Neurologic exam was normal with intact sensory exam. He had good grip in the upper extremities with good range of motion. The doctor noted that he had difficulty finishing sentences and focusing. The doctor wrote that he did "not see this getting better" and encouraged him to "seek disability." (Tr. 539-540). In March 2016, plaintiff denied shortness of breath. (Tr. 536).

Dr. Kadiyamkuttiyil, a neurologist who practiced in the same office as Dr. Robertson, began seeing plaintiff in August 2016. Plaintiff "had no further stroke symptoms." He denied shortness of breath, weakness, fatigue, dizziness, tingling, and poor balance. He was still having headaches. The doctor noted he was using a CPAP machine and felt "remarkably better." He denied speech problems, arm or leg weakness, incoordination, or difficulty walking. He was not feeling depressed or anxious. On exam, language was intact, sensation and position sense were intact, and his gait was within normal limits. He had intact facial sensation and no

facial asymmetry. No definite muscle weakness was detected. The doctor wrote that he was doing "significantly better" regarding his stroke. He was to continue taking gabapentin and Topamax. The assessment included "history of transient ischemic attack (TIA), and cerebral infarction without residual deficits." (Tr. 499-500). Dr. Kadiyamkuttiyil noted similar findings in April 2017. Plaintiff "denied memory issues." (Tr. 495-500).

In July 2017, plaintiff told Dr. Mitchell that he had "trouble even walking outside in the weather without feeling nauseous and lightheaded." He was depressed. He said he had trouble with his memory. Exam was normal. The assessment was history of TIA and cerebral infarction without residual deficits, anxiety disorder, chronic pain syndrome, GERD, and impaired glucose tolerance. (Tr. 558-559).

   4.   **Psychological Exams**

Fred Klug, Ph.D., performed a consultative psychological exam at the request of the agency in November 2015. Plaintiff was oriented. His attention span was adequate. Concentration was good. Immediate and short-term memory were impaired. Reasoning, abstract thinking, judgment, and insight were poor. Tests for central nervous system deficits were negative, meaning he could perform tasks such as kicking a ball, flipping a coin, and copying designs. Word fluency was adequate. His intellectual functioning appeared to be borderline. Dr. Klug thought that he "could not participate in the management of his own funds." (Tr. 482-486).

In May 2016, Katherine Ancell, an educational psychologist, administered an IQ test at the request of plaintiff's attorney. This resulted a full-scale IQ score of 59. Dr. Ancell noted that there was "a 95% confidence that his true score falls between 56 and 64." She said this is in the "intellectually delayed range," formerly referred to as "mild mental retardation." (Tr. 490-493).

### Analysis

Plaintiff's first and final points concern the IQ test administered by Dr. Ancell and the Listings.

Plaintiff first argues that he meets the requirements of Listing 12.05 because of the full-scale IQ score of 59. He argues that the ALJ erroneously failed to discuss that Listing.

A finding that a claimant's condition meets or equals a listed impairment is a finding that the claimant is presumptively disabled. The Listings are found at 20 C.F.R. Pt. 404, Subpt. P, App. 1. In order to be found presumptively disabled, the claimant must meet all of the criteria in the listing; an impairment "cannot meet the criteria of a listing based only on a diagnosis." 20 C.F.R. §404.1525(d). The claimant bears the burden of proving that he meets or equals a listed impairment. *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012); *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999).

Plaintiff's Listing arguments are doomed by several misunderstandings. First, he asserts that 12.05 is the "only appropriate" Listing. Doc. 24, Ex. 1, p. 10. That is wrong. Listing 11.04, Vascular Insult to the Brain, applies to strokes.

The ALJ discussed 11.04 at Tr. 19. Plaintiff does not raise any challenge to the determination that he did not meet Listing 11.04.

Plaintiff's argument that he meets Listing 12.05 goes nowhere. As he notes, Listing 12.05 was amended effective January 17, 2017. See, 81 FR 66137. Under the prior version, a valid IQ score of 59 was needed to satisfy § 12.05B. Under the revised version, which was in effect at the time of the ALJ's decision, a full-scale score of less than 70 is one of the qualifying criteria for § 12.05B. Plaintiff fails to understand that both versions also require evidence that supports the onset of the condition before the age of 22. Plaintiff incorrectly reads the prior version not to require evidence of onset before the age of 22, even though he cited the language of the prior regulation requiring same on the second page of his brief.

The prior version of § 12.00, paragraph (A), explains that the structure of Listing 12.05 is different from the structure of most of the other Listings in the mental disorders section:

> Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.

Thus, in order to meet Listing 12.05B, a claimant must satisfy both the criteria of the introductory paragraph, and the criteria of paragraph B.

The criteria of the prior version of the introductory paragraph of Listing 12.05 are "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the

evidence demonstrates or supports onset of the impairment before age 22." The requirement of onset before age 22 is intended to limit 12.05 to an "innate condition" as opposed to conditions caused by disease or accident suffered as an adult. See, *Novy v. Astrue*, 497 F.3d 708, 709 (7th Cir. 2007).

Plaintiff's incorrect reading of the prior version of the Listing leads him to argue in his final point that he had some kind of "vested right" to have the prior version applied to his case even though the revised version was in effect when the ALJ decided the case. It is unnecessary to address that argument because application of the old version would make no difference: both versions require evidence of onset before age 22, which is lacking here.

Backing away from the argument he made under his first point, plaintiff suggests under his final point that the current version of § 12.05B does not require evidence of onset before the age of 22. This is plainly wrong. The first sentence of current § 12.05B states that section is satisfied by meeting the requirements of paragraphs 1, 2 *and* 3. Paragraph 2 requires evidence of significant deficits in current adaptive functioning. Paragraph 3 requires evidence that "demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22." See also, § 12.00H.1 ("Listing 12.05 is based on the three elements that characterize intellectual disorder: Significantly subaverage general intellectual functioning; significant deficits in current adaptive functioning; and the disorder manifested before age 22.")

Plaintiff briefly argues in his final point that the ALJ failed to properly

evaluate him under Listing 12.02, Neurocognitive Disorders, but his argument is devoid of any specifics. Again, it is his burden to demonstrate that he meets or equals a Listing. *Filus v. Astrue*, 694 F.3d at 868; *Maggard,* 167 F.3d at 380.

Plaintiff also argues that the ALJ failed to consider whether there were sufficient grounds to reopen the prior denial. However, the ALJ explained why he denied the request to reopen the prior denial at Tr. 15. In any event, a denial of a request to reopen is not a final decision subject to judicial review in the absence of a colorable constitutional issue. *Campbell v. Shalala*, 988 F.2d 741, 745 (7th Cir. 1993). Plaintiff has not raised a colorable constitutional issue here.

In his second point, plaintiff accuses the ALJ of "cherry-picking," i.e., selectively considering the evidence to plaintiff's detriment.

The Seventh Circuit has "repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014).

According to plaintiff, the ALJ discounted the IQ test results, ignored evidence of loss of bi-manual dexterity, and discounted Dr. Klug's opinion.

The ALJ was required to weigh the medical opinions using the factors set forth in 20 C.F.R. § 404.1527(c). Supportability and consistency are two important factors to be considered in weighing medical opinions. *Schaaf v. Astrue,* 602 F.3d 869, 875 (7th Cir. 2010). An ALJ can give less weight to a doctor's opinion if it is internally inconsistent or inconsistent with other substantial

evidence as long as he articulates his reasons for doing so. *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011).

The ALJ discounted the IQ test results because the low scores were "inconsistent with the findings from the neurological examinations and assessments of no residuals from the stroke." (Tr. 28). Simply put, no health care provider who treated plaintiff ever suggested that his cognitive functioning was in the range indicated by the IQ testing. In fact, as the ALJ noted, nurses who worked with plaintiff in a Diabetes Self-Management Program in 2015 described him as asking "great questions" and showing "great understanding." (Tr. 19, citing Tr. 411-412). Plaintiff does not offer any specific criticism of the ALJ's reasoning and had not demonstrated that he overlooked any relevant evidence in discounting the IQ test results.

The ALJ did not entirely discount Dr. Klug's opinion because Dr. Klug's observations regarding plaintiff's memory problems were contradicted by plaintiff's repeated denials of memory problems to his treaters, and by the doctors' notes indicating he had no residuals from the stroke. He also noted that many of Dr. Klug's findings contradicted Dr. Ancell's findings. (Tr. 31). Plaintiff ignores this explanation, focusing instead on Dr. Klug's opinion that plaintiff could not manage his own funds. Plaintiff argues that this is consistent with Dr. Ancell's findings. However, Dr. Klug did not specify why he thought that plaintiff was unable to manage his own funds, and plaintiff does not offer evidence that inability to manage funds is inconsistent with the ability to do simple, routine work. He also ignores

the fact that Dr. Klug said plaintiff's intellectual functioning was in the borderline range, which is inconsistent with the IQ test results found by Dr. Ancell.

As for ignoring evidence of loss of bi-manual dexterity, the short answer is that there was none beyond plaintiff's subjective allegations. The ALJ noted that repeated exams by both the primary care physician and the neurologist showed normal neurologic and sensory exams. See, Tr. 24-27. Plaintiff ignores this evidence which squarely contradicted his claims.

Plaintiff takes issue with the ALJ's credibility findings, but this point must be denied for similar reasons.

SSR 96-7p, applicable here, requires the ALJ to consider the entire record, and to consider a number of factors in assessing the claimant's credibility, including the objective medical evidence, the claimant's daily activities, medication for the relief of pain, and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." SSR 16-3p, 2016 WL 1119029 at *7.

The ALJ demonstrated in detail that the allegations made by plaintiff and his wife were not only unsupported but affirmatively contradicted by the medical evidence. Both his neurologist and his primary care provider assessed him as progressing to the point where he was without residual effects from his stroke. (Tr. 27). Plaintiff relies on medical notes from 2013, before the period in issue and while he was still recovering. Doc. 24, Ex. 1, p. 9. He completely ignores the later notes reflecting normal exams and that he had no residuals. In short, the

ALJ's conclusion as to the accuracy of plaintiff's statements was supported by the evidence and was not "patently wrong;" it must therefore be upheld. *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007).

Even if reasonable minds could differ as to whether plaintiff was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot substitute its judgment for that of the ALJ in reviewing for substantial evidence. *Burmester,* 920 F.3d at 510; *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). This is not a case in which the ALJ failed to discuss evidence favorable to the plaintiff or misconstrued the medical evidence. Plaintiff's arguments are little more than an invitation for this Court to reweigh the evidence. He has not identified a sufficient reason to overturn the ALJ's conclusion.

## Conclusion

After careful review of the record, the Court is convinced that the ALJ committed no errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying plaintiff's application for disability benefits is **AFFIRMED**.

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATE: August 26, 2019.**

**DONALD G. WILKERSON**
**U.S. MAGISTRATE JUDGE**